**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SUZANNE RUDD and BRITNEY WALLS, individually and on behalf of all others similarly situated, | Civil Action No. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | **JURY TRIAL DEMAND** |
| ABBOTT LABORATORIES D/B/A ABBOTT NUTRITION, | |
| Defendant. | |

COMES NOW, SUZANNE RUDD and BRITNEY WALLS ("Plaintiffs"), individually and on behalf of the Classes, who state and allege as follows:

**INTRODUCTION**

1. Plaintiffs bring this action on behalf of themselves and on behalf of Classes of similarly situated consumers against Defendant Abbott Laboratories d/b/a Abbott Nutrition ("Defendant" or "Abbott") who purchased certain powdered infant formulas manufactured and sold by Abbott.

2. Abbott manufactures and sells infant formula products. These products include the brands Similac, Alimentum, and EleCare which parents trust and use to feed and nourish their children.

3. On February 17, 2022, the U.S. Food and Drug Administration ("FDA") in conjunction with the U.S. Centers for Disease Control and Prevention ("CDC") alerted consumers to avoid purchasing or using certain powdered infant formula products produced at Abbott's Sturgis, Michigan facility.

1

4. Specifically, the FDA announced that it is investigating consumer complaints of *Cronobacter sakazakii* and *Salmonella* Newport infections connected to powdered infant formula products produced by Abbott.

5. On February 18, 2020, Abbott announced a recall of its powdered infant formula products, including the brands Similac, Alimentum, and EleCare because they suffer from a defect which could result in serious injury, permanent impairment, and even be life-threatening.

6. These products may contain *Cronobacter sakazakii* and *Salmonella* Newport bacteria, which when consumed, can result in serious adverse health effects, including sepsis, meningitis, poor feeding, irritability, fever, jaundice, grunting breaths, abnormal movements, and bowel damage.

7. Similac, Alimentum, and EleCare products where the first two digits of the product are 22 through 37 and the code on the container contains "K8," "SH," or "Z2," and the use-by date is April 1, 2022 or later are all part of the recall ("Recalled Products").

8. Despite the recall, Abbott is not crediting or replacing affected Recalled Products, which many parents and caretakers rely on daily to feed and care for their children. Since Abbott is now telling consumers it is not safe for their infants to consume these products, but many consumers rely on them to feed their children, Abbott leaves many consumers with no safe option but to pay full price for a newer version.

9. Plaintiffs purchased Abbott's powdered infant formula included in the recall. Plaintiffs would not have purchased the product or would have paid less for it had they known about the contamination and potential health hazards.

10. As a result of Abbott's unfair, deceptive, and/or fraudulent business practices, consumers of these products, including Plaintiffs, have suffered an ascertainable loss, injury-in-fact, and otherwise have been harmed by Abbott's conduct.

## PARTIES

11. Plaintiff Rudd is a resident of the City of Tomah, County of Monroe, Wisconsin.

12. Plaintiff Walls is a resident of the City of West Monroe, Parish of Ouachita, Louisiana.

13. Defendant is an Illinois corporation with its principal place of business in Illinois.

14. Defendant is engaged in the business of manufacturing and selling medical devices and products, including powdered infant formulas through its Abbott Nutrition division.

15. Defendant's headquarters is located at 100 Abbott Park Road, Abbott Park, Illinois 60064.

16. Defendant may accept service via its registered agent CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

## JURISDICTION AND VENUE

17. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d), this Court has original jurisdiction because the aggregate claims of the members of the putative class exceeds $5 million, exclusive of costs, and at least one of the Class members is a citizen of a different state than Abbott.

18. This Court has jurisdiction over this matter because Abbott is an Illinois business, with its principal place of business in Illinois.

19. Abbott regularly and systematically conducts business and sells its products in this District to customers in this District, including to members of the putative Classes. As such, Abbott is subject to the jurisdiction of this Court.

20. Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because Abbott is subject to personal jurisdiction in this District and regularly conducts business in this District.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

I.     **ABBOTT'S INFANT FORMULA.**

21.    Similac is a brand of powdered infant formula produced by Abbott which Abbott promises will "give babies a strong start by helping to keep them fed, happy, and healthy." *See Why Similac*, https://www.similac.com/why-similac.html (last visited February 18, 2022). According to Abbott, Similac "is the #1 Pediatrician Recommended Brand for Immune Support." *Id.*

22.    Alimentum is a brand of powdered infant formula produced by Abbott for infants with lactose sensitivity which Abbott claims is "the #1 infant formula brand fed for cow's milk protein allergy in the US." *See Alimentum Product Description*, https://www.similac.com/products/baby-formula/alimentum-powder/19-8oz-can-4pack.html (last visited February 18, 2022).

23.    EleCare is a brand of powdered infant formula produced by Abbott for infants who cannot tolerate intact or hydrolyzed protein due to conditions such as severe food allergies or short bowel syndrome. *See EleCare Product Information*, https://elecare.com/ (last visited February 18, 2022).

24.    The worldwide market for powdered infant formula was valued at $27.7 billion in 2019.[1]

25.    The powdered infant formula market in the United States was valued at $3.65 billion in 2019.[2]

---

[1] *See Infant Formula Milk Powder Market Size 2021*, https://www.marketwatch.com/press-release/infant-formula-milk-powder-market-size-2021-global-industry-trends-future-growth-regional-overview-market-share-by-prominent-players-developing-technologies-tendencies-revenue-cagr-of-42-and-forecast-outlook-till-2024-2021-12-09 (last visited February 18, 2022).
[2] *See U.S. Baby Infant Formula Market to Reach $5.81 Bn, Globally, by 2027 at 5.8% CAGR: Allied Market Research*, https://www.prnewswire.com/news-releases/us-baby-infant-formula-

26. In 2016, Abbott's Similac Advance product accounted for 21.2% of the powdered infant formula market share, with two other Similac products in the top 10.[3]

27. Abbott distributes its powdered infant formula products nationwide and internationally.

28. According to Abbott, Recalled Products were distributed to the following countries: Australia, Bahrain, Barbados, Bermuda, Canada, Chile, China, Colombia, Costa Rica, Dominican Republic, Ecuador, Egypt, Guam, Guatemala, Hong Kong, India, Indonesia, Israel, Jordan, Kuwait, Lebanon, Malaysia, Mexico, New Zealand, Oman, Peru, Puerto Rico, Qatar, Saudi Arabia, Singapore, South Africa, Sudan, Taiwan, Thailand, United Arab Emirates, United Kingdom, United States, and Vietnam ANI South.

II. **CURRENT CASES LINKED TO ABBOTT'S INFANT FORMULA**

29. Currently, four infant illnesses from three states are linked Abbott's infant formula products. All four required hospitalization and one resulted in death.

30. The four cases include infants from Minnesota, Ohio, and Texas.

31. The first known hospitalization occurred in and around September 6, 2021.

32. All four cases are reported to have consumed powdered infant formula produced from Abbott's Sturgis, Michigan facility.

33. These cases include three reports of *Cronobacter sakazakii* infections and one report of *Salmonella* Newport infection in infants.

---

market-to-reach-5-81-bn-globally-by-2027-at-5-8-cagr-allied-market-research-301273688.html (last visited February 18, 2022).
[3] *See Market share of the leading baby formula (powder) brands of the United States in 2016, based on dollar sales*, https://www.statista.com/statistics/443950/market-share-of-the-leading-us-baby-formula-powder-brands/ (last visited February 18, 2022).

34. *Cronobacter sakazakii*, formerly known as *Enterobacter sakazakii*, is a germ that can live in dry foods, such as powdered infant formula, powdered milk, herbal teas, and starches.

35. *Cronobacter* can cause diarrhea and urinary tract infections in people of all ages, but infection can be very serious in infants. *Cronobacter* germs can cause a dangerous blood infection (sepsis) or make the linings surrounding the brain and spinal cord swell (meningitis). Infants two months of age and younger are most likely to develop meningitis if they get sick from *Cronobacter*.

36. *Salmonella* Newport is one of many *Salmonella* serotypes, a type of bacteria known to cause more than one million foodborne illnesses in the United States every year.

37. *Salmonella* Newport is known to be antimicrobial resistant meaning it is resistant to antibiotics like ampicillin, chloramphenicol, streptomycin, sulphonamides, and tetracycline.

38. *Salmonella* illness can be serious, and children under the age of five are more likely to get a serious *Salmonella* infection.

39. Symptoms for salmonellosis, the name for an infection caused by *Salmonella* bacteria, include fever, stomach cramps, diarrhea, bloody stools, prolonged vomiting, and dehydration. Severe cases of salmonellosis require hospitalization and may result in death.

### III. THE FDA'S INSPECTION OF ABBOTT'S FACILITY.

40. The FDA conducted an onsite inspection of Abbott's Sturgis, Michigan facility.

41. The FDA tested Abbott's Sturgis, Michigan facility and received several positive *Cronobacter* results from environmental samples.

42. The onsite inspection also included adverse inspectional observations by FDA investigators.

43. The FDA reviewed Abbott's internal records which evidenced environmental contamination with *Cronobacter sakazakii* bacteria.

44. Abbott's internal records also evidenced the destruction of product at the Sturgis, Michigan facility due to the presence of *Cronobacter*.

45. On February 17, 2022, the FDA, in conjunction with the CDC, announced a warning to consumers to not purchase or use Recalled Products.

46. FDA Deputy Commissioner for Food Policy and Response stated as part of the FDA warning, "As this is a product used as the sole source of nutrition for many of our nation's newborns and infants, the FDA is deeply concerned about these reports of bacterial infections. We want to reassure the public that we're working diligently with our partners to investigate complaints related to these products, which we recognize include infant formula produced at this facility, while we work to resolve this safety concern as quickly as possible."

47. On February 18, 2022, Abbott announced a recall of its powdered infant formulas. The recall does not include a refund, reimbursement, or replacement for consumers who purchased or used Recalled Products.[4]

### IV. PLAINTIFFS' USE OF ABBOTT'S RECALLED PRODUCT.

48. Plaintiffs have regularly fed their infant with Abbott's powdered infant formulas.

49. In and around February 2022, Plaintiffs purchased Abbott's Similac powdered infant formula.

50. The first two digits of the products purchased by Plaintiffs are 22 through 37 and the code on the container contains "K8," "SH," or "Z2," and the use-by date is April 1, 2022 or later.

51. Plaintiffs are now afraid to use Abbott's Recalled Product because of the health dangers described in Abbott's recall.

---

[4] *Recall Notice*, https://www.similacrecall.com/us/en/home.html (last visited February 20, 2022).

52. Plaintiffs will now have to purchase new powdered infant formula at full price.

53. Plaintiffs would not have purchased Abbott's Recalled Product if they had known it was defective and contaminated.

54. Plaintiffs seek a refund, reimbursement, or replacement of the Recalled Product, including any and all other damages for the injuries they have sustained as a result of Abbott's defective and contaminated Recalled Products.

## CLASS ACTION ALLEGATIONS

55. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of Classes of individuals defined as:

Wisconsin Class:

> *All persons in Wisconsin who, within the applicable statute of limitations period, purchased a Recalled Product manufactured by Abbott Laboratories.*

Louisiana Class:

> *All persons in Louisiana who, within the applicable statute of limitations period, purchased a Recalled Product manufactured by Abbott Laboratories.*

56. Plaintiffs reserve the right to modify or amend the definition of the proposed Classes and/or to add subclasses, if necessary, before this Court determines whether class certification is appropriate.

57. Excluded from the Classes are: (1) any entity in which Defendant has a controlling interest; (2) officers or directors of Defendant; (3) this Court and any of its employees assigned to work on the case; and (4) all employees of the law firms representing Plaintiffs and the Classes.

58. This action is brought and may be properly maintained on behalf of each Class member.

59. *Numerosity of the Class:* The members of the Classes are so numerous that a joinder of all members would be impracticable. While the exact number of Class members is presently

unknown to Plaintiffs, and can only be determined through appropriate discovery, Plaintiff believes the Classes are likely to include thousands of members based on the fact Abbott distributes its Recalled Products nationwide.

60. The Class definitions identify unnamed Plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify themselves as having a right to recover damages from Defendant. Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to the Classes through notice published in newspapers or other publications.

61. *Commonality:* This action involves common questions of law and fact. The questions of law and fact common to both Plaintiffs and the Classes include, but are not limited to, the following:

   a. Whether the Recalled Products fail under the implied warranty of usability;

   b. Whether Abbott was negligent in selling the Recalled Products;

   c. Whether Abbott failed to warn consumers regarding the risks of the Recalled Products;

   d. Whether Abbott was unjustly enriched by the sale of Recalled Products;

   e. The appropriate nature of class-wide equitable relief; and

   f. The proper method or methods to determine and measure Plaintiffs' and the Class' damages.

62. *Typicality:* Plaintiffs' claims are typical of all members of the Classes. The evidence and the legal theories regarding Abbott's alleged wrongful conduct committed against Plaintiffs and the Classes are substantially the same because all putative Class members purchased Abbott's Recalled Product for personal use and can no longer use the Recalled Products for their intended use. Accordingly, in pursuing their own self-interest in litigating their claims, Plaintiff will also serve the interests of the Classes.

63. *Adequacy:* Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs retained competent counsel experienced in class action litigation to ensure such protection. There are no material conflicts between the claims of the representative Plaintiffs and the Classes that would make class certification inappropriate. Additionally, Plaintiffs' Counsel are competent to advance the interests of the Classes having been designated as Lead Counsel in dozens, if not hundreds, of Class cases. Plaintiffs and their Counsel intend to prosecute this action vigorously.

64. *Predominance and Superiority:* The matter is properly maintained as a class action under Fed. R. Civ. P. 23(b)(3) because the common questions of law and fact identified herein, and to be identified through discovery, predominate over questions that may affect only individual Class members. Further, a class action is superior to all other available methods for the fair and efficient adjudication of this matter because the injuries suffered by the individual Class members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for Plaintiffs and the Classes to individually seek redress for Abbott's wrongful conduct. Even if any individual person or group(s) of the Classes could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Classes and would lead to repetitious trials of the numerous common questions of law and fact. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods

for the fair and efficient adjudication of this action. Absent a class action, Plaintiffs and the Classes will continue to suffer losses, thereby allowing Abbott's violations of law to proceed without remedy and allowing Abbott to retain the proceeds of their ill-gotten gains.

65. Plaintiffs anticipate the issuance of notice setting forth the subject and nature of the instant action to the proposed Classes. To the extent any further notices may be required, Plaintiffs anticipate the use of additional media or mailings.

## CAUSES OF ACTION

## COUNT I

## BREACH OF THE IMPLIED WARRANTY OF USABILITY

### (On Behalf of Plaintiffs and the State Classes)

66. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

67. Abbott, as manufacturer of the Recalled Products, impliedly warranted to Plaintiffs and the Classes that the Recalled Products were usable for their ordinary and intended use.

68. Abbott breached the implied warranty of usability in connection with the sale and distribution of the Recalled Products. At the point of sale, the Recalled Products while appearing normal—contained defects as set forth herein rendering them unusable.

69. Abbott, its agents and its employees knew or should have known that the Recalled Products suffer from a defect that causes negative health effects and/or places persons at risk for negative health effects to such an extent that the products are unusable.

70. Abbott's recall announcement instructs Class Members to not use Recalled Products because of the health risks. This renders the products unusable and thus worthless.

71. Abbott did not provide appropriate warranty relief notwithstanding the risks of using the Recalled Products. Plaintiffs and the Classes reasonably expected, at the time of purchase, that the Recalled Products were usable for their ordinary and intended use.

72. Had Plaintiffs and Class Members known they would not be able to use their Recalled Products, they would not have purchased them or would have paid significantly less for them.

73. As a direct and proximate result of Abbott's breach of the implied warranty of usability, Plaintiffs and the Classes have sustained damages in an amount to be determined at trial.

## COUNT II
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of Plaintiffs and the State Classes)

74. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

75. Abbott, as manufacturers of the Recalled Products, impliedly warranted to Plaintiffs and the Classes that the Recalled Products were of merchantable quality and safe for their ordinary and intended use.

76. Abbott breached the implied warranty of merchantability in connection with the sale and distribution of the Recalled Products. At the point of sale, the Recalled Products while appearing normal—contained defects as set forth herein rendering them unsuitable and unsafe for personal use.

77. Had Plaintiffs and the Classes known the Recalled Products were unsafe for use, they would not have purchased them.

78. Abbott did not provide appropriate warranty relief notwithstanding the risks of using the Recalled Products. Plaintiffs and the Classes reasonably expected, at the time of purchase, that the Recalled Products were safe for their ordinary and intended use.

79. As a direct and proximate result of Abbott's breach of the implied warranty of merchantability, Plaintiffs and the Classes have sustained damages in an amount to be determined at trial.

## COUNT III

## NEGLIGENT FAILURE TO WARN

### (On Behalf of Plaintiffs and the State Classes)

80. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

81. Abbott owed Plaintiffs and Class Members a duty of care and to warn of any risks associated with the Recalled Products. Abbott knew or should have known of the true risks but failed to warn Plaintiffs and Class Members.

82. Abbott's negligent breach of duty caused Plaintiffs and Class Members economic damages and injuries in the form of exposure to products with *Cronobacter sakazakii* and *Salmonella* Newport.

83. Plaintiffs and Class Members would not have purchased, chosen, and/or paid for all or part of the Recalled Products had they known that the risks associated with purchasing the product.

84. Plaintiffs and the Classes suffered damages in an amount to be determined at trial.

## COUNT IV

## NEGLIGENT RECALL

### (On Behalf of Plaintiffs and the State Classes)

13

85. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

86. In issuing a voluntary recall, Abbott assumed duties to Plaintiffs and the Classes to exercise reasonable care in issuing and implementing the recall.

87. Abbott breached its duties by failing to adequately warn Plaintiffs and the Classes of the dangers associated with the use of the Recalled Products by refusing to promptly replace the Recalled Products.

88. As a direct result of Abbott's breach of duty, Plaintiffs and the Classes have suffered harm in an amount to be determined at trial.

## COUNT V

## UNJUST ENRICHMENT

### (On Behalf of Plaintiffs and the State Classes)

89. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

90. Plaintiffs and the Class Members conferred a tangible and material economic benefit upon Abbott by purchasing the Recalled Products. Plaintiffs and Class Members would not have purchased, chosen and/or paid for all or part of Recalled Products had they known that they the true risks of using the Recalled Products while Abbott cannot provide a timely repair or replacement for the Recalled Products. Under these circumstances, it would be unjust and inequitable for Abbott to retain the economic benefits it received at the expense of Plaintiffs and the Classes.

91. Failing to require Abbott to provide remuneration under these circumstances would result in Abbott being unjustly enriched at the expense of Plaintiffs and the Class Members who

endure being exposed to the risk of developing serious medical conditions and can no longer use their products safely.

92. Abbott's retention of the benefit conferred upon it by Plaintiffs and the Classes would be unjust and inequitable.

93. Plaintiffs and the Classes suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A. Certifying the proposed Wisconsin Class, appointing Plaintiff Rudd as representative of the Wisconsin Class, and appointing counsel for Plaintiff Rudd as Lead Counsel for the Wisconsin Class;

B. Certifying the proposed Louisiana Class, appointing Plaintiff Walls as representative of the Louisiana Class, and appointing counsel for Plaintiff Walls as Lead Counsel for the Louisiana Class;

C. Finding that Abbott breached the implied warranty of usability;

D. Finding that Abbott breached the implied warranty of merchantability;

E. Finding that Abbott negligently failed to warn Plaintiffs and the Classes;

F. Finding that Abbott negligently recalled the Recalled Products;

G. Finding that Abbott was unjustly enriched by its sale of the Recalled Products;

H. Awarding damages in an amount according to proof;

I. Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law;

J. Reimbursing all costs, expenses, and disbursements accrued by Plaintiffs in connection with this action, including reasonable attorneys' fees, costs, and expenses pursuant to applicable law and any other basis; and

K. Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Classes, hereby demand a trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: July 18, 2022                                              Respectfully submitted,

 *s/ Timothy J. Becker*
Timothy J. Becker (MN Bar #0256663)
Jacob R. Rusch (MN Bar #0391892)
Zackary S. Kaylor (MN Bar #0400854)
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
T: 612-436-1800
F: 612-436-1801
E: tbecker@johnsonbecker.com
E: jrusch@johnsonbecker.com
E: zkaylor@johnsonbecker.com

AND

Peter J. Flowers (IL Bar #6210847)
Michael W. Lenert (IL Bar #6297019)
**MEYERS & FLOWERS, LLC**
3 North Second Street, Suite 300
St. Charles, IL 60174
T: (630) 232-6333
E: pjf@meyers-flowers.com
E: mwl@meyers-flowers.com

*Attorneys for Plaintiffs and the Classes*